[No. 22434. Department Two. September 8, 1930.]

E. O. HITE *et al., Appellants,* v. CASHMERE CEMETERY ASSOCIATION *et al., Respondents.*

SAMUEL REID, *Appellant,* v. CASHMERE CEMETERY ASSOCIATION *et al., Respondents.*[1]

*A. N. Corbin,* for appellants.

*Sam R. Sumner* and *Harvey F. Davis,* for respondents.

MAIN, J.—In the superior court of Chelan county, two actions were brought, in each of which injunctive relief was prayed for. The plaintiffs in one action were E. O. Hite and wife; in the other action, the plaintiff was Samuel Reid. In each action, the defendants were the Cashmere Cemetery Association, W. W.

[1]Reported in 290 Pac. 1008.

Jones and B. T. Vaughn. The two actions were, by stipulation, consolidated, and were tried to the court without a jury, and resulted in a judgment of dismissal, from which the plaintiffs appeal.

The facts are these: Hite and wife are the owners of a five-acre tract of orchard land about a mile and a half from the city of Cashmere, in Chelan county. Adjoining this land on the south, is a tract owned by Reid. To the west of these two tracts of land, is a county road extending north and south, forty feet wide. On the west side of the road, and to the south of the Reid tract, is what is called the "old cemetery," which has been in existence for more than twenty years. Across the road from the Hite tract, is what is called the "new cemetery," which was acquired by the cemetery association during the year 1916. Between the new cemetery and the old cemetery, there is a five-acre tract of land called the "Gist tract," which the cemetery association has purchased for the purpose of a burial ground. In the southeast corner of the new cemetery, there is a tract of land, rectangular in shape, two hundred feet by one hundred fourteen feet, which has been referred to as the "restricted area." Some years ago, the then owner of the Gist tract entered into a contract with the cemetery association not to use this rectangular piece for burial purposes. In 1928 the cemetery association purchased the Gist tract.

Upon the restricted area above referred to, there is now, and for many years has been, a well. There are also wells upon the Gist tract and upon the Reid tract, and the Hites caused a well to be dug upon their property in the year 1927. Hite and wife purchased their tract on contract in 1920, and obtained a deed shortly before instituting their action. For a number of years after moving upon their property, they used

water from the well on the restricted area. For three or four years before they caused the well to be dug on their own property, they used water from the well on the Gist tract.

The water table which feeds all these wells is approximately twenty-eight feet below the surface. This is an arid region, and crops are produced and trees grown by irrigation. The surface water never sinks to a depth of below three or four feet from the surface. The depth of the graves in the new cemetery is approximately six feet. The soil below the depth of the graves until it reaches the water table is dry, gravelly, rocky or sandy, with probably some clay.

When the Hites purchased their property, the new cemetery was being used as a place for the burial of dead bodies. When Reid purchased his property, the old cemetery was being used for the same purpose.

The appellants, by these actions, seek to prohibit the cemetery association from using the restricted area above referred to and the Gist tract, which has recently been purchased, for cemetery purposes.

The appellants make four principal contentions: First, that the water table above referred to flows in a northeasterly direction; second, that there is a fear on the part of appellants that water coming from the cemetery will contaminate water in the wells and endanger the health of themselves, their families or tenants; third, that the value and salability of the property of the appellants has been lessened, and will continue to be lessened to an even greater extent by using lands immediately across the county road from the lands of the appellants for cemetery purposes; and fourth, that the use of the lands as a cemetery interferes with the comfortable enjoyment of the life and property of the appellants.

As to the first question, it will be admitted that the water table flows in a northeasterly direction.

■ As to the second question, the fear of the appellants that the water coming from the cemetery will contaminate the water in the wells, the evidence will not sustain their contention. In order that a germ might leave one of the dead bodies in the cemetery, and finally reach the well of either of the appellants, it would be necessary for the germ to travel approximately twenty feet downward, through dry, sandy or gravelly soil, until it reached the water table, and then be carried by the water table, which moves with extreme slowness, a distance of two or three hundred feet, until it would be deposited in one of the wells. The evidence not only fails to show that this would be reasonable and probable, but conclusively shows that it would be highly improbable.

■ As to the third and fourth contentions, these are answered by the case of *Rea v. Tacoma Mausoleum Association,* 103 Wash. 429, 174 Pac. 961, 1 A. L. R. 541, where the authorities are exhaustively considered. In the course of the opinion in that case, there was quoted from 5 R. C. L., page 235, the following:

"As public cemeteries, for the orderly and decent sepulture of the dead, are necessary requirements for all populous communities, private convenience must yield to the convenience of the public in fixing sites for them and the courts should be particularly careful not to interfere to prevent such establishments, unless the mischief be undoubted and irreparable. The decided weight of authority may be said to be to the effect that a cemetery is not per se a nuisance; . . ."

and, after considering the authorities, it was said:

"No decision has been called to our attention wherein any court has awarded injunctive relief, rested upon the sole ground of the mere presence of a cemetery or

other place of sepulture, unattended by injurious or offensive drainage or fumes, sensible to the complaining party, and our own search leads us to believe that no such decisions have been rendered."

In the opinion in that case the cases of *Shepard v. Seattle,* 59 Wash. 363, 109 Pac. 1067, 40 L. R. A. (N. S.) 647; *Everett v. Paschall,* 61 Wash. 47, 111 Pac. 879, Ann. Cas. 1912B 1128, 31 L. R. A. (N. S.) 827, and *Densmore v. Evergreen Camp No. 147 W. O. W.,* 61 Wash. 230, 112 Pac. 255, Ann. Cas. 1912B 1206, 31 L. R. A. (N. S.) 608, relied upon by the appellants in this case, were reviewed and distinguished.

In the case now before us, the evidence fails to show the presence of injurious or offensive drainage or fumes. It would seem that the appellants could not well complain of the depreciation of the value of their properties by reason of the extension of the cemetery, since Hite and wife purchased their property after the old and new cemetery were both established and being used, and Reid purchased his after the old cemetery was in use. What the cemetery association is now proposing to do is to enlarge the cemetery grounds, which is a thing that the appellants should have anticipated would become reasonably necessary in the course of time.

We have not overlooked the statutory provisions defining nuisance, to which the appellants have called our attention, or the adjudicated cases which they have cited.

The judgment will be affirmed.

MITCHELL, C. J., FULLERTON, HOLCOMB, and FRENCH, JJ., concur.