### McCAW et al. v. HARRISON et al.

Court of Appeals of Kentucky.
June 19, 1953.

Thomas P. Bell and Fowler & Fowler, Lexington, for appellants.

Elwood Rosenbaum, Lexington, for appellees.

DUNCAN, Justice.

Appellants, who own and operate a dairy farm on land located on each side of the Fayette and Jessamine county line, sought by this action to enjoin appellees from using their adjoining boundary for commercial cemetery purposes. The appeal is from a judgment which denies this relief. The question presented is largely one of fact, the determination of which requires a review of some rather morbid details referred to in the evidence.

Appellants' well, which is the main source of water for stock and family purposes, is located some five hundred feet from the property line of the proposed cemetery. The area embraced by the cemetery site and appellants' land is underlaid with cavernous limestone which contains sinkholes, crevices, channels, and fissures. The overburden of soil is shallow as indicated by rock-sounding maps filed by appellees. Therefore, the burial of bodies will necessarily be on or very close to the underlying rock.

For the appellants, the testimony of an eminent geologist, a pathologist, and embalmer, and a cemetery manager indicates some possibility of contamination of the wells and springs in that area. These witnesses, each testifying as to facts within his particular field, describe the process of contamination as follows: (1) harmful disease germs and bacteria are present at death; (2) these organisms survive the embalming process because of the low pressures used to preserve, as near as can be, the lifelike appearance of bodies; (3) the water in the area involved will reach these decaying and putrefied bodies because of the shallow overburden of soil and because of the manner of modern day burials; and (4) that the fissures, crevices, channels, and sinkholes in the underlying cavernous limestone will act as a channel and stream for the water carrying these harmful organisms into wells and springs in the area. These witnesses express the view that the contamination resulting from the disease germs and bacteria from the dead human bodies is a definite hazard to appellants' health.

On the other hand, a civil engineer, specializing in sanitary engineering, and a bacteriologist, who has for more than twenty-six years been a professor of bacteriology at the University of Kentucky, testifying for appellees, express the opinion that no contamination of appellants' water supply will result from the proposed use. These witnesses say that the combined factors of the virtual disinfection of the body by embalming, plus the barriers of the casket and vault, make it virtually impossible for the harmful organisms to get into the soil; that even should they reach the soil, they cannot travel a greater distance than fifty feet, which distance is usually considered as affording complete protection to wells and springs from contamination of decaying bodies.

■■■ A cemetery does not constitute a nuisance merely because it is a constant reminder of death and has a depressing influence on the minds of persons who observe it, or because it tends to depreciate the value of property in the neighborhood, or is offensive to the aesthetic sense of an adjoining proprietor. 10 Am.Jur., pages 498–499, section 16, Cemeteries. On the other hand, if the location or maintenance of a cemetery endangers the public health, either by corrupting the surrounding atmosphere, or water of wells or springs, it constitutes a nuisance. Nelson v. Swedish E. L. Cemetery Ass'n, 111 Minn. 149, 126 N.W. 723, 127 N.W. 626, 34 L.R.A., N.S., 565; McDaniel v. Forest Park Cemetery Co., 156 Ark. 571, 246 S.W. 874; Sutton v. Findlay Cemetery Ass'n, 270 Ill. 11, 110 N.E. 315, L.R.A. 1916B, 1135; Hite v. Cashmere Cemetery Ass'n, 158 Wash. 421, 290 P. 1008.

■■ The parties are in practical agreement concerning the legal principles which control the disposition of this appeal. Their disagreement concerns the question of whether or not the evidence is sufficient to indicate that the maintenance of this cemetery will sufficiently endanger the health of appellants and others so as to bring it within the rule which we have stated.

It hardly needs citation of authority to support the proposition that where the evidence is conflicting and the mind of the reviewing court has no more than a doubt concerning the finding of a Chancellor on a question of fact, the finding will not be disturbed. The evidence in this case deals with a highly technical subject, and although conflicting, does not preponderate greatly in favor of either side. We do not have such a clear conviction of error in the finding of the Chancellor as would justify a reversal.

■ The contention of appellants that a further hazard to the safety of the residents of the area will be created by possible traffic congestion resulting from slow-moving funeral processions is hardly worthy of note. Funeral processions are an inevitable incident of cemeteries regardless of their location, and to some extent always present a traffic problem. Without reviewing the evidence on this feature of the case, it is sufficient to say that we are not impressed with the argument that the maintenance of the cemetery should be

enjoined because of the probability of traffic congestion and possibility of resulting accidents.

For the reasons indicated, the judgment of the lower court is affirmed.