**Mary C. MORRIS, Appellant,**

**v.**

**Vinson MORRIS, Appellee.**

Court of Appeals of Kentucky.

June 17, 1960.

James C. Ware (Ware & Ware), Covington, for appellant.

Bradford T. Garrison, Department of Revenue, Frankfort, for appellee.

T. T. Burchell, Manchester, for appellant.

John C. Little, McKee, for appellee.

STEWART, Judge.

This is an appeal from two orders of the Jackson Circuit Court which gave the custody of four infant children to appellee, Vinson Morris, their father, and which made a property settlement between appellant, Mary C. Morris, and appellee following the granting of a divorce to the latter on the grounds of cruel and inhuman treatment.

Appellant and appellee were married on April 18, 1943, at McKee in Jackson County. While living together as husband and wife they had four boys whose ages at the time the divorce action was filed on August 30, 1956, were 13, 11, 9 and 2. They had no property at the beginning of their marriage except a few household goods appellant's mother had given her.

In 1950, having removed from Kentucky to Dayton, Ohio, the parties became the joint owners of real estate in that city which they acquired for $6,500. Appellee had paid off $5,300 of the purchase price of this property before the commencement of this action. They moved back to McKee from Dayton, Ohio, in August, 1955, and soon thereafter jointly bought a house and a lot in McKee for $3,000. A vendor's lien was retained in the deed for the purchase price, and upon this debt $1,100 had been paid (apparently by appellant's mother) prior to the beginning of this litigation. When they separated appellee also was part owner of two old bulldozers of dubious value and the sole owner of a 1952 automobile of uncertain worth.

After appellee instituted this divorce action on the date heretofore mentioned, appellant filed an answer, two amended answers and two counterclaims. In the second counterclaim she asked for a divorce on grounds that we need not consider. The Chancellor in March, 1957, on appellant's motion, awarded her $80 per month for the support of the children and gave her and the children the use of the house and furniture in McKee. This order further provided that appellee should have the custody of the children on weekends.

In May, 1956, appellant removed the children to Dayton, Ohio, where her parents lived and where she has since resided, and she has kept the children there and, according to appellee, has refused to allow him to see them. He testified he once went to Dayton, Ohio, and undertook to visit his children, but was prevented from doing so by his being incarcerated in jail on a warrant sworn out by his wife which charged him with nonsupport of his children.

Appellee paid the child maintenance allowance for one month but thereafter refused to make further advances to the wife; he claims the court order granting him custody of the boys each weekend was violated by appellant, with the result that he was released from the obligation imposed upon him to support them. Appellant has filed a suit for divorce in the Court of Common Pleas of Montgomery County at Dayton, Ohio, and has therein asked for the custody of the children.

Divorce was granted to appellee by the Jackson Circuit Court on August 8, 1957; and the custody of the children was bestowed upon him on September 7, 1957. A property settlement was adjudged on June 11, 1958, which awarded appellee the equity of the parties in the McKee real estate and in the bulldozers, the car and the furniture he had bought and paid for himself. Appellant received the furniture given her by her mother and the judgment recited that she and the children "shall have the fee

in and to the house and lot located at Dayton, Ohio."

This appeal is from the order granting the custody of the children to appellee and also from the order dividing the property between them in the manner recited.

The mother's theory in resisting the father's right to the custody of the children seems to be, among other things, that she contends he is a narcotic addict and is therefore an unfit person to have the responsibility of raising them. In her answer she asked that court action be held in abeyance in this suit until the father submitted to an examination to determine "his mental and physical condition which is now abnormal.". In her second amended answer she stated that he is "in a sense a dope addict and very dangerous to her and her infant children when under the influence of same." She further pled that he gambled away his earnings, and that he assaulted her in the presence of the children. She also averred in her pleadings that the father refused to pay the doctor and hospital bills for herself and her children when they became sick. The father denied all these allegations. Nor did the Chancellor ever direct appellee to be examined, physically or mentally.

In an affidavit filed April 16, 1957, appellant said that when appellee came to visit the children, they "refused to go out to the road to see him and only at her insistence did they go talk" to him; and that after the children declined to go with him, as directed by the order of March, 1957, he beat her and threatened her life. She also stated that the children so fear appellant that they will never live with him. In her deposition, taken later, she testified she left appellee because he was jealous of her, would not let her go places and put her in fear of her life. The depositions of her father, mother and eldest son corroborated these statements of appellant.

Appellee testified by deposition that appellant nagged him and tried to cause arguments with him in the presence of the children; that she would not allow him to associate with the children; that he had never refused to pay the medical bills, or any other bills; that he was not addicted to the use of narcotics; that he never beat his wife; that he played pool some for recreation but did not dissipate his earnings in this game. The deposition of his brother substantiated this testimony of appellee's.

■■■ As can be observed, there is not much evidence in this case to go on; and, as is plainly evident, the testimony introduced in behalf of each of the parties is in such conflict that we on this Court cannot determine which set of witnesses we should believe. There was, however, no proof offered that appellant was a user of dope. Evidently the averments in appellee's pleadings on this point were nothing more than an empty accusation. At least, the Chancellor was of this opinion. Under the evidence presented he determined appellee was the proper person to have the boys. We believe the rule laid down in McCaw v. Harrison, Ky., 259 S.W.2d 457, 458, should control the disposition of the child-custody question under the circumstances. There we said: "It hardly needs citation of authority to support the proposition that where the evidence is conflicting and the mind of the reviewing court has no more than a doubt concerning the finding of a Chancellor on a question of fact, the finding will not be disturbed."

■■ Coming now to a consideration of the property settlement, appellant apparently contends (as we interpret her counsel's brief) that the only way she may be able to support the four boys adequately is to obtain all of appellee's property. Since the Chancellor has granted the custody of the children to appellee, which we are upholding in this opinion, the contention advanced by appellant can scarely be considered tenable. As has been shown, appellant was given the lion's share of appellee's property when the settlement order was entered and, as she contributed no actual money toward its acquisition, the

Chancellor was more than generous in the amount of the award he made to her of appellee's estate.

Most of the evidence on the point involved deals with how the property in litigation was acquired. Appellant's parents were generous with *loans,* but these were always paid back until the couple separated. Repayments on the part of appellee since then have stopped. Appellant seems to want "restoration" to her of property on which her parents loaned part of the purchase money and which was repaid by appellee. This theory is not consistent with the law regarding divorce property settlements.

We can see no reason to disturb the Chancellor's ruling in respect to the property settlement decreed by him.

Wherefore, the judgment is affirmed.