25 F.3d 1049
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Bernice McGINNIS, Plaintiff-Appellant,
v.
TENNESSEE GAS PIPELINE CO., Defendant-Appellee.
 No. 93-5393.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1994.
 
 Before: NELSON, SUHRHEINRICH, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment in favor of the defendant in a nuisance action. The plaintiff occupies a home on property adjacent to an industrial tract, owned by the defendant, that is contaminated with polychlorinated biphenyls (PCBs). The plaintiff has no evidence that her property has been contaminated, but she says that it may be contaminated and that the defendant's conduct in releasing PCBs on its land has reduced the value of her property and caused her emotional distress.
 
 
 2
 Under Kentucky law, which is controlling here, the plaintiff cannot prevail without establishing physical harm to or interference with her property. Concluding, upon de novo review, that the plaintiff has not made out a triable issue of fact in this regard, we shall affirm the judgment for the defendant.
 
 
 3
 * The defendant, Tennessee Gas Pipeline Company, owns and operates a natural gas pipeline system parts of which pass through eastern Kentucky. Compressor Station No. 200, one of a number of compressor stations used to push gas through the pipeline, is located in Greenup County, Kentucky, next to the plaintiff's property. During the 1950s the company began using Pydraul AC at Station 200. Pydraul AC is a fire-retardant lubricant containing PCBs. During the period when the company was using the product, some of it leaked through the seals in the air compressor cylinders and mixed with moisture in the compressed air stream. The company disposed of this PCB-laden moisture in the soil of the drainage system at the station.
 
 
 4
 The company discontinued its use of Pydraul AC in 1974, but tests conducted in 1988 revealed the presence of PCBs in the soil around Station 200 and in an adjoining stream. The company notified the Commonwealth of Kentucky, which brought suit in state court for disposal of hazardous substances without a permit in violation of KRS Chapter 224. The company eventually signed an agreement with the Commonwealth in which it undertook to determine the precise extent of PCB contamination, abate any further releases of PCBs, and develop a plan to remedy the contamination. In testing to determine the extent of the contamination, the company discovered that PCBs had migrated off its property and onto the property of certain downstream landowners.
 
 
 5
 The plaintiff, Bernice McGinnis, owns approximately 800 acres of land adjacent to and upstream of the Station 200 tract. The company's environmental consultants collected 17 soil samples, 2 water samples, and 2 sediment samples from Ms. McGinnis' property and found no evidence of PCBs. Ms. McGinnis hired an environmental consultant, James Knauss, who conducted his own tests and worked with the company's consultants when they performed their tests. Mr. Knauss found no evidence of PCB contamination on the McGinnis property. The Kentucky Natural Resources and Environmental Protection Cabinet sampled Ms. McGinnis' water and likewise found no evidence of PCBs.
 
 
 6
 Ms. McGinnis and three other nearby property owners filed suit against the company in a Kentucky state court. The plaintiffs alleged that the defendant's release of PCBs had contaminated their land, reduced the value of their properties, and caused them severe emotional distress. The company removed the case to the United States District Court for the Eastern District of Kentucky, where it moved for summary judgment as to Ms. McGinnis' claims for property damage and emotional distress. The district court initially granted summary judgment on the emotional distress claims alone. With respect to the property damage claim the court noted that although Ms. McGinnis had not yet produced evidence of PCBs on her property, she had offered an affidavit in which Mr. Knauss expressed the opinion that there was a high probability of contamination on the property. The court denied summary judgment to allow Ms. McGinnis to seek additional evidence of actual contamination.
 
 
 7
 Ms. McGinnis then filed a motion asking for appointment of an expert by the court. The company opposed the motion and renewed its motion for summary judgment.
 
 
 8
 In due course the district court denied the motion to appoint an expert, granted summary judgment to the defendant, and dismissed the complaint. A subsequent motion to alter or amend the judgment was denied, and Ms. McGinnis has filed a timely notice of appeal.
 
 
 9
 To prevail on a motion for summary judgment, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate against a party who, having been called upon to do so, fails to come forward with evidence tending to establish a disputed element of that party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is not entitled to go to trial on the basis of allegations alone. Significant probative evidence must be presented in support of the complaint. Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir.1991). This court reviews summary judgment proceedings de novo, making all reasonable inferences in favor of the nonmoving party. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990).
 
 
 10
 Under Kentucky, nuisances are " 'that class of wrongs which arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort, or hurt that the law will presume a consequent damage.' " City of Somerset v. Sears, 313 Ky. 784, 786, 233 S.W.2d 530, 532 (Ky.1950), quoting 39 Am.Jur., Nuisances. In deciding whether a nuisance exists, a court must balance the reasonableness of the defendant's use of his property against the gravity of harm to the plaintiff. Louisville Refining Co. v. Mudd, 339 S.W.2d 181, 186 (Ky.1960). Neither factor alone can establish the existence of a nuisance. Id.
 
 
 11
 In order to establish a nuisance, Kentucky law requires an actual physical interference with or harm to the plaintiff's property. No Kentucky case has awarded damages for nuisance without some detectable physical interference with the property. Thus in Morgan v. Hightower's Adm'r, 291 Ky. 58, 59-60, 163 S.W.2d 21 (Ky.1942), Kentucky's highest court held that damage to the reputation of property where a suicide had occurred, resulting in reduced property values, was not recoverable in a trespass action absent actual physical interference with the property.
 
 
 12
 In Louisville v. Munro, 475 S.W.2d 479 (Ky.1971), the plaintiffs sought to recover for diminution in the value of their property after the city announced plans to build a zoo on adjacent property. The court stated that "[t]he general rule ... is that in order to be a nuisance the use of the property must disturb physical comfort or be offensive to physical senses." Id. at 482 (emphasis in original), citing 58 Am.Jur.2d, Nuisances, Sec. 42. In McCaw v. Harrison, 259 S.W.2d 457 (Ky.1953), similarly, the court held that dairy farmers could not enjoin the construction of a cemetery on adjoining property. The plaintiffs claimed that the cemetery could contaminate their well water and would reduce their property values. The court held that the plaintiffs' fears were not actionable absent actual contamination. Id. at 458. See also Bartman v. Shobe, 353 S.W.2d 550, 555-556 (Ky.1962) (reduced property value due to adjacent sewage plant not actionable in absence of actual harm to property).
 
 
 13
 Ms. Mcginnis argues, however, that the Kentucky Legislature's recent (1991) enactment of KRS Sec. 411.500 et seq., governing nuisance, displaced existing case law and removed the requirement of a physical harm to the plaintiff's property.[1] The argument is not persuasive.
 
 
 14
 The legislature made it clear that the statute was intended to codify and supplement existing case law, not to displace it. See K.R.S. Sec. 411.500 ("It is the intent of the General Assembly to restate and codify ... the common law of nuisance as existing in the Commonwealth...."); Sec. 411.570 ("[nuisance statute] shall not be construed as repealing any of the statutes or common law of the Commonwealth relating to nuisance ... but shall be held and construed as ancillary and supplemental thereto"). Ms. McGinnis has not identified any specific element of the statute that would alter the common law requirement of physical interference with the plaintiff's property.
 
 
 15
 As we read the record, it does not indicate any basis on which a trier of fact could find that there has been physical harm to the plaintiff's property. Although James Knauss' affidavit states that there is a high probability of contamination, it is undisputed that there is, as yet, no physical evidence of contamination. Kentucky law requires more than a risk of contamination before plaintiff can prevail in a nuisance action.[2]
 
 
 16
 Ms. McGinnis claims that the defendant's actions have interfered with her ability to enjoy her property because she is fearful of eating the vegetables from her garden or allowing her grandchildren to play outside. It is clear that under Kentucky law a plaintiff in a nuisance action may recover a loss in property value caused by the nuisance, but "[n]o damages shall be awarded for annoyance, discomfort, sickness, emotional distress or similar claims." KRS Sec. 411.560(3). Accord, City of Somerset v. Sears, 233 S.W.2d 530, 532, 313 Ky. 784, 785 (Ky.1950). In the absence of actual harm to her property, Ms. McGinnis is not entitled to recover damages.
 
 
 17
 Ms. McGinnis also maintains that because the defendant's actions violated state pollution laws, its conduct was clearly unreasonable and therefore constituted a nuisance as a matter of law. We find no support for this contention in Kentucky law. Although illegal activity on a property is a factor suggesting that the activity may be a nuisance, illegality, standing alone, does not establish the existence of a nuisance in the absence of interference with the plaintiff's property. Ms. McGinnis has not been able to point to any evidence tending to establish the threshold requirement of interference with her property.
 
 
 18
 Ms. McGinnis relies on a case in which a federal district court in Kentucky held Tenneco (the parent of the defendant in the case at bar) liable for PCB contamination caused by a leak in a compressor station. See Fletcher v. Tenneco, Inc., 37 ERC (BNA) 1237 (E.D.Ky.1993). In Fletcher, however, tests showed actual PCB contamination of the plaintiff's property. Fletcher is thus entirely consistent with well-established nuisance law, and does not support the proposition that Ms. McGinnis may recover in the absence of actual contamination.
 
 
 19
 Ms. McGinnis was not entitled to have the court appoint an expert, at the defendant's expense, to conduct additional testing on her property. Rule 706, Fed.R.Evid., gives a trial court broad discretion to appoint an expert in a civil case and to apportion costs as necessary. A district court's decision on such a matter is subject to reversal only for abuse of discretion, and we see no abuse of discretion here. The McGinnis property has already been tested several times by three different experts, and Ms. McGinnis has established neither that she is unable to pay for additional testing nor that additional testing is likely produce different results.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 She also maintains that the statute requires that a jury decide nuisance claims, precluding summary disposition. See id., Sec. 411.550 ("the judge or jury ... shall consider all relevant facts and circumstances") (emphasis added). However, it is clear that the statute was not intended to preclude summary dispositions. It merely indicates that if the case should survive summary judgment and proceed to a trial, then the trier of fact is directed to consider certain factors
 
 
 [2]
 Mr. Knauss states that Ms. McGinnis's property could become contaminated in the future through PCB-contaminated dirt being blown on to her property. If future tests reveal that contamination has occurred, Ms. McGinnis may, of course, renew her claim