Warren SMITH and 127 Additional Appellants, Named in the Notice of Appeal, Appellants

v.

CARBIDE AND CHEMICALS CORPORATION; Union Carbide Corporation; Martin Marietta Energy Systems Incorporated; Martin Marietta Utility Services Incorporated; Lockheed Martin Energy Systems Incorporated; and Lockheed Martin Utility Services, Appellees.

No. 2005–SC–000686–CL.

Supreme Court of Kentucky.

June 21, 2007.

James W. Owens, Paducah, Edmund J. Schmidt III, David Randolph Smith, Nashville, TN, Counsel for Appellants.

Robert E. Tait, Vorys, Saater, Seymour & Pease, LLP, Columbus, OH, Mark C. Whitlow, Whitlow, Roberts, Houston & Straub, Paducah, Counsel for Appellees.

Opinion of the Court by Justice SCHRODER.

Pursuant to CR 76.37(1), this Court granted the certification request of the United States Court of Appeals for the Sixth Circuit to answer the following questions of Kentucky law:

I. Is proof of actual harm required to state a claim for an intentional trespass?

II. If the plaintiffs can prove a diminution in their property values due to an intentional trespass, do they have a right of recovery under Kentucky law?

In certifying the questions of law to this Court, the United States Court of Appeals for the Sixth Circuit provided a brief explanation of the facts that gave rise to the case. The one hundred and twenty eight (128) appellants are individuals who own eighty parcels of property (property owners) within ten miles of the fifty-year-old Paducah Gaseous Diffusion Plant (PGDP), a federally owned and contractor-operated uranium enrichment facility located in McCracken County, Kentucky. The appellees are those contractor-companies (contractors) that have operated the PGDP facility under agreement with the federal government.

The Order of Certification further provided that:

In August 1988, the Radiation Health and Toxic Branch of the Kentucky Department of Health discovered groundwater contamination, specifically contamination of trichloroethlene (TCE) and technetium–99 (Tc–99), in a plume of groundwater flowing northwest from the facility. Levels of TCE exceeding regulatory limits were detected in a few wells, but the Tc–99 concentrations were below the proposed regulatory limits. The PGDP provided a temporary water supply to the residents in the area to

alleviate any concerns about the groundwater contamination, and the United States Department of Energy eventually provided them with municipal water at no cost. No health problems associated with this contamination have been claimed by the [property owners]; rather, they seek damages for the alleged diminution in the market value of their properties due to the contamination.

On March 1, 1990, a second plume of TCE groundwater contamination was detected extending northeast from the boundaries of PGDP. The PGDP conducted a neighborhood notification survey of all local residents and held public briefings about the newly detected contamination. In total, approximately 10 billion gallons of contaminated water were spreading off the PGDP site as of April 2000, the month in which the United States General Accounting Office issued a report regarding the contamination and cleanup efforts.

The property owners filed a lawsuit on January 3, 1997,[1] alleging (per the certification order):

a diminution in property values based on contamination caused by the operation of the PGDP. Although they concede that the alleged contamination is composed of imperceptible particles, which are not visible to the naked eye, their contention is that the groundwater and soil contamination constituted an intentional trespass, a characterization not contested by the defendants. Because the trespass was intentional, the [property owners] maintain that a demonstration of actual harm is not necessary to maintain their action.

The contractors filed a motion for summary judgment and the property owners filed a cross-motion. In granting the contractors their motion and dismissing the case, the district court cites to *Mercer v. Rockwell International Corp.*, 24 F.Supp.2d 735, 741 (W.D.Ky.1998), the " 'right to exclusive possession' is liberally interpreted so as to not subject property owners to most uninvited intrusions, some entries may be so insubstantial or so trifling that they will not infringe upon the legally protected interest in freedom from interference with exclusive possession."

The case was appealed to the United States Court of Appeals for the Sixth Circuit which has to decide whether the district court erred in determining that there are no genuine issues of material fact regarding the actual harm to the property owners' realty. Because issues in the case involve questions of Kentucky law that have not been addressed previously by a Kentucky court, the Sixth Circuit has requested certification of the aforementioned questions of law pursuant to CR 76.37.

## I. Is proof of actual harm required to state a claim for an Intentional trespass?

■ To the first question for certification, "Is proof of actual harm required to state a claim for intentional trespass?", we must answer "No."

■ Property owners are traditionally afforded far-reaching legal protections in the exclusive use and enjoyment of their land. 6–A AMERICAN LAW OF PROPERTY § 28.1 (A.J. Casner ed.1954). "Any intended intrusion or encroachment which is not privileged is actionable without regard for the shortness of the period of the interference, or the absence of pecuniary harm." *Id.* Kentucky follows the common law. In *Fletcher v. Howard,* 226 Ky. 258, 10 S.W.2d 825 (1928) *overruled in part by*

1. Under the Price–Anderson Act, 42 U.S.C. §§ 2011, federal courts are granted jurisdiction over actions relating to nuclear facilities, but are required to apply state law.

*Cissell v. Grimes Investments, Inc.,* 383 S.W.2d 128 (Ky.1964),[2] the Court dealt with an intentional trespass where the evidence on actual damages was speculative or vague. Our predecessor, the Court of Appeals, opined that when "[t]he evidence was vague as to the amount of damage, but where a trespass has been committed upon the property of another, he is entitled at least to nominal damages for the violation of his rights." *Id.* at 260, 10 S.W.2d at 826–27.

By 1950, in the case of *Hughett v. Caldwell,* 313 Ky. 85, 230 S.W.2d 92 (1950), the then Court of Appeals, in discussing the difference between an intentional and innocent trespass, recognized "[i]t is the universal inference of the law that *every* unauthorized entry upon the land of another person results in some damages, though it may be nominal." *Id.* at 90, 230 S.W.2d at 96 (emphasis added). In the case of *Randall v. Shelton,* 293 S.W.2d 559, 562 (Ky.1956), the Court set forth the three situations where an interference with property will support an award of damages in Kentucky: *intentional trespass;* extrahazardous activity; and negligent trespass that causes a harm or injury.

■ *Ellison v. R & B Contracting, Inc.,* 32 S.W.3d 66 (Ky.2000), provided this Court with an opportunity to revisit the law of trespass to real property. The jury found the trespass was intentional. Although the case focused on the proper damages for trespass, the Court reaffirmed the traditional law of trespass, "even if the plaintiff suffered no actual damages as a result of the trespass, the plaintiff is entitled to nominal damages." *Id.* at 71. However, in intentional trespass, in order to recover more than nominal damages, a property owner must prove "actual injury," which we shall discuss further below. *Hughett,* 313 Ky. at 90, 230 S.W.2d at 95.

**II. If the plaintiffs can prove a diminution in their property values due to an intentional trespass, do they have a right of recovery under Kentucky law?**

The second question certified to this Court, "If the plaintiffs can prove a diminution in their property values due to an intentional trespass, do they have a right of recovery under Kentucky law?" cannot be answered simply "yes" or "no". The question confuses the "right to recover" with the "measure of damages" as a substitute "for proof of actual harm". Kentucky law allows the recovery of just compensation (not merely nominal damages) upon proof of actual injury to the real estate. *Hughett,* 313 Ky. at 90, 230 S.W.2d at 96. Once the particular injury to real estate is shown, the diminution in fair market value is a recognized *measure* of damages. *Ellison,* 32 S.W.3d at 69; *see also George v. Standard Slag Co.,* 431 S.W.2d 711, 712 (Ky.1968) (providing for a measure of damages). The preliminary question in a contamination case in Kentucky is at what level does the trespass evolve from a mere stigma, or damage to the reputation of the realty, into an actual injury or harm? *See Morgan v. Hightower's Adm'r,* 291 Ky. 58, 163 S.W.2d 21 (Ky.1942).

The *Hughett* Court recognized that "the courts of the country have differed on the question of what constitutes actual loss ...." *Id.* at 90–91, 230 S.W.2d at 96. In *Rockwell Int'l Corporation v. Wilhite,* 143 S.W.3d 604 (Ky.App.2003), our Court of Appeals dealt with known deposits of polychlorinated biphenyls (PCBs) on some fifty-four tracts of land. The property owner's argument in *Rockwell* claimed harm to the land even though PCBs were invisible

---

**2.** *Cissell,* 383 S.W.2d at 130, recognized the common law rule as to damages for intentional trespass, but refused to remand where only *nominal* damages were at issue.

to the eye, odorless, and presented a progressive problem, much like the intentional trespass in our case. Although that case dealt with negligent trespass, the applicable statute of limitations, and the "discovery rule," much of the court's discussion on actual injury or harm is relevant in the case sub judice for compensatory damages for intentional trespass and even nuisance cases. Citing this Court's earlier decision in *Wilhite v. Rockwell International Corporation*, 83 S.W.3d 516 (Ky.2002), and the evidence before the trial court, the appellate court noted that competent evidence of injury included the fact that PCB's were designated by Congress and the state of Kentucky as hazardous substances, that the EPA had made determinations of the concentrations which were unreasonably dangerous and carcinogenic, etc. *Rockwell*, 143 S.W.3d at 618.

In rejecting the property owner's argument that *any* detectable quantity of PCB's provides sufficient proof of injury to support a claim for actual or compensatory damages, the Court of Appeals held that a decrease in the fair market value was not in itself a harm but a means of "measuring the harm." *Id.* at 621. As to the level or concentration of PCB's that amount to a harm, the court noted that "after a quarter of a century and a half of industrialization there is most likely no land in the continental United States that is completely free from one or more potentially toxic or harmful substances . . . ." *Id.* The court opined that because "[n]o persons who have come upon the land have been harmed, no farm animals or pets have been sickened, nor have any crops been lost" and that "[t]he land and the buildings thereon continue to be used as they were before the presence of PCBs was discovered", the landowners failed to establish injury or harm as a consequence of the trespass. *Id.* at 625.

■ To reach the question posed, the Sixth Circuit must determine whether the contaminants in this case create an actual injury—an interference with an owner's use of the land. We know from *Morgan*, 291 Ky. at 60, 163 S.W.2d at 22–23, that mere damage to the reputation of realty does not entitle one to recovery, as that injury is more imaginary than real. Likewise, the mere presence of contaminants may only damage the property's reputation and not its use. The Court of Appeals in *Rockwell*, 143 S.W.3d at 604, set the bar for a compensable harm in negligent trespass cases to fall at the point where the contaminants cause a health hazard. Relying on our rationale in *Wood v. Wyeth–Ayerst Laboratories*, 82 S.W.3d 849 (Ky. 2002), a products liability case with a question as to "harm to the person," the *Rockwell* court reasoned that the mere presence of PCB's itself was not an injury, that some physical harm needed to be shown. *Id.* at 623.

■ This Court is not as forgiving in identifying actual injury to real property, whether by intentional or negligent trespass. When the intrusion is through imperceptible particles not visible to the naked eye, there may still be an actual injury. In *Commonwealth ex rel. Dep't of Natural Res. v. Stephens*, 539 S.W.2d 303, 305 (Ky.1976), a takings case, the Court recognized damages for interfering with a property's use where no physical injury existed to the property (the owner was prohibited from certain uses of his property). And in *George* and *Anderson*, nuisance cases, the court allowed damages for interfering with the use and enjoyment of property without a physical intrusion. *George*, 431 S.W.2d at 711; *Ky. & W. Va. Power Co. v. Anderson*, 288 Ky. 501, 156 S.W.2d 857 (1941). Property owners are not required to prove contamination that is an actual or verifiable *health* risk, nor are

they required to wait until government action is taken. An intrusion (or encroachment) which is an unreasonable interference with the property owner's possessory *use* of his/her property is sufficient evidence of an actual injury (or damage to the property) to award actual damages.

 When the parcel's groundwater is contaminated, whether by imperceptible particles or visible particles, to the extent that it cannot be used for consumption by humans, animals, or crops, there is an actual injury. When ponds and streams have to have signs posted to prevent swimming, fishing, drinking, or other otherwise normal uses, there is an unreasonable interference with one's use and enjoyment. The amount of harm, if any, to the individual parcels, and the corresponding measure of actual or compensatory damages will depend upon the proof introduced at trial—an issue of fact. *Ellison*, 32 S.W.3d at 70. To the extent that the property owners prove actual or compensatory damages for the harm (the cost of restoring the property to the pre-trespass condition), "the amount by which the injury to the property diminishes its total value operates as an upper limit on any damage recovery." *Id.* Thus, the diminution in the property's value due to an intentional trespass is a recognized measure of damages after, or if, an actual injury has been found.

The law of Kentucky is hereby certified to the United States Court of Appeals for the Sixth Circuit.

All sitting. MCANULTY, NOBLE, and SCOTT, JJ., concur.

CUNNINGHAM, J., dissents by separate opinion.

MINTON, J., dissents by separate opinion in which LAMBERT, C.J., joins.

Dissenting Opinion by Justice CUNNINGHAM.

I respectfully dissent from the most thoroughly researched and well-stated majority opinion. At the same time, I cannot join the concise and well-written dissenting opinion of Justice Minton.

In my opinion, the majority is correct in stating that the answer to question one should be "no." However, I part ways on the second issue and believe that the answer to the second question should be an unequivocal "yes." Once an intentional trespass is shown, the diminution in the property value should, in and of itself, be sufficient to award damages. I do not believe that actual harm—as the majority defines such harm—is required for damages to be awarded in intentional trespass. American Law of Property and the *Rockwell* case—both relied upon by the majority—seem to hold actual damage is required only in negligent trespass.

In fact, *Rockwell* states that liability is imposed for intentional trespass when there is an intrusion, even when it is harmless. Liability is imposed for negligent trespass only when there has been harm to the property. This suggests that no harm is required in intentional trespass, and that once that is established damages are computed.

If nominal damages are authorized for intentional trespass, then certainly actual damages should be.

Here, the totally innocent and complaining property owners have had their property invaded by unseen particles to the extent that the trespassing party has provided an independent water source. If the presence of this intrusion reduces the value of the property, then those landowners should be compensated.

The past Kentucky cases would indicate that a person subject to intentional tres-

pass is entitled to nominal damages only when other damages cannot be proven. They certainly infer that when other damages are proven they should be recoverable. I do not agree with the majority opinion that "in order to have a right of recovery of compensatory damages under Kentucky law, the property owner must show proof of actual harm or injury." It doesn't seem logical to allow someone to receive nominal damages—which are unspecific and nonexistent—and not afford compensatory damages which are real and discernible.

It seems critical to this writer not to become bogged down in semantics in debating the terms "harm" and "damages." When this case is distilled to its simplest form, a clear and cogent need for judicial redress surfaces. There exists an innocent property owner. There is a willful and intentional trespasser upon that property. The trespass causes a change in the property. Because of that change, a free and willing buyer is reluctant to pay the same money as he or she would have paid without the change. There is harm. There is damage.

Neither should we be moved by the law's aversion to compensating for a mere "stigma" upon real estate. The trespass here is real. It is not a stigma. It is neither imagined by the owner or the general public. The decrease in market value to that trespass is not irrational, fantastical, or rooted in emotion. The PCB's may be unseen, but they are not without manifest results. Property buyers are as reasonable in their reluctance to purchase a potential need for future litigation as they would be of accepting a cloud upon the title.

I do not accept the prediction that such a holding would have "the potential of opening the proverbial floodgates of litigation." Common experience of the industrial age has taught us that those entities capable of perpetuating such trespasses are also more than capable of taking care of themselves. Unless the diminution of the value of their property is recoverable in our courts upon a mere showing of intentional trespass, individual homeowners cannot.

Dissenting Opinion by Justice MINTON.

I respectfully dissent because I believe that Kentucky should join other states in requiring proof of actual harm to sustain a viable action for the intentional trespass of imperceptible particles. This position is aptly expressed in Judge Joseph McKinley's opinion in this case. See Smith v. Carbide and Chemicals Corp., 298 F.Supp.2d 561 (W.D.Ky.2004). As stated by the Supreme Court of Washington, "[n]o useful purpose would be served by sanctioning actions in trespass by every landowner within a hundred miles of a manufacturing plant. Manufacturers would be harassed and the litigious few would cause the escalation of costs to the detriment of the many." Bradley v. American Smelting and Refining Co., 104 Wash.2d 677, 709 P.2d 782, 791 (1985). Judge McKinley wisely cautioned that the approach taken by the majority would have "the potential of opening the 'proverbial floodgates of litigation[.]'" Smith, 298 F.Supp.2d at 569.

I would also adopt Judge McKinley's scientifically verifiable measure of actual harm requiring "proof that the contaminants constitute a scientifically demonstrable health or safety hazard at the levels shown to be present on the property[,]" id. at 572–73 (quotation marks omitted). Basing a determination of actual harm on demonstrable scientific evidence instead of on a subjective fear would better preserve our longstanding rule that denies recovery

for a diminution in property values based solely on a stigma. *See, e.g., Morgan v. Hightower's Adm'r.,* 291 Ky. 58, 163 S.W.2d 21 (1942).

Under Kentucky law, punitive damages are also recoverable in situations where compensatory damages are nominal. *Commonwealth Dept. of Agriculture v. Vinson,* 30 S.W.3d 162, 165–66 (Ky.2000); *Louisville & N.R. Co. v. Ritchel,* 148 Ky. 701, 147 S.W. 411, 413–14 (1912). Thus, the majority's approach potentially allows a property owner who has suffered no scientifically demonstrable harm to seek an award of punitive damages.

For the foregoing reasons, I respectfully dissent.

LAMBERT, C.J., joins this dissenting opinion.