OPINION OF THE COURT BY JUSTICE CUNNINGHAM
Factual and Procedural Background
On December 2, 2010, the Energy and Environmental Cabinet's Environmental Response Branch responded to a leak of approximately 1,000 gallons of #2 Fuel Oil (i.e. home heating oil) from a faulty underground *878 storage tank at an unoccupied property owned by the Martha Magel Estate. The heating oil flowed downhill from the Estate's property and flooded the nearby residence of Appellants, Cindy and Jim Muncie. Although Appellee Patricia Wiesemann, the testatrix of the Martha Magel Estate, hired contractors to remove the heating oil and prevent further contamination, the leaking continued to damage the property.
From December 2 onward, heating oil continued to leak onto the Muncies' property. The sump pump failed on December 8, and extensive damage to the basement, driveway, and lawn of the Muncie residence ensued. The continued contamination caused the Environmental Response Branch to request on January 13, 2011, that an environmental emergency be declared. The agency then implemented emergency procedures to "limit any human health or environmental impacts" at the Muncie residence.
In May of 2011, Auto-Owners Insurance Company, Wiesemann's liability insurer, filed an Interpleader complaint in federal court against Wiesemann, the Muncies, the Dunkles, Shield Environmental Associates, Inc. ("Shield"), and the Kentucky Department for Environmental Protection (specifically, the Environmental Response Team and the Division of Waste Management, Superfund Branch).
In September of 2013, the parties in the federal action entered into the Partial Settlement and Partial Release Agreement. Auto-Owners discharged its obligation to resolve third-party claims by paying settlements for damages and environmental cleanup costs. Notably, the settlement allocated $60,000 to the Muncies for repair costs, intended to remedy actual damages to their property. Additionally, the Muncies agreed to dismiss all claims against Wiesemann, the Magel Estate, and Shield, except for a few reserved claims. Prominently, the partial settlement reserved "claims by the Muncies asserting the diminution of the value of their real estate due to the stigma resulting from the contamination...." Partial Settlement and Partial Release Agreement at 2.
One month later, the Muncies filed the underlying state claim in Oldham Circuit Court against Wiesemann and Shield for negligence, trespass, and permanent nuisance. In May of 2015, Wiesemann filed a motion for summary judgment, arguing that the partial settlement barred the state action because the Muncies were fully compensated for the actual damages the contamination caused to their property. Citing Smith v. Carbide & Chems. Corp., 226 S.W.3d 52 (Ky. 2007), Wiesemann argued that, as a matter of law, stigma damages can only be recovered when paired with an actual damages award.
During its October 16, 2015 hearing, the Oldham Circuit held that, while stigma damages may be considered in the measure of actual damages for remediation, the Muncies could not seek both the costs of remediation (i.e. the repair costs) and the diminution in value due to stigma damages. Because the Muncies settled their remediation claim in the partial settlement agreement, the trial court held that no further claim existed. Thus, the Muncies' claim for stigma damages was dismissed. The Muncies appealed to the Court of Appeals of Kentucky.
On appeal, the Muncies argued that: (1) stigma damages resulting from the diminution in value of real property are recoverable where there is actual damage; and (2) remediation for actual damages is not a bar to recovery of stigma damages. While the Court of Appeals agreed that "when there is actual damage to real property, stigma or reputation damages may be included as a measure of damages ...
*879 [however,] there is not an independent right of recovery available for such damages." Court of Appeals Opinion at 10. The Muncies moved this Court for discretionary review, which we granted.
Analysis
"Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So we operate under a de novo standard of review with no need to defer to the trial court's decision." Shelton v. Kentucky Easter Seals Soc'y, Inc., 413 S.W.3d 901, 905 (Ky. 2013) (internal citations omitted).
Stigma Damages are Recoverable
Throughout the procedural history of this case, whether Kentucky law recognizes stigma damages as part of an injured party's recoverable damages has been undisputed. The Court of Appeals recognized this legal truth, finding that stigma damages are awardable where actual damages exist. But it was also held that stigma damages cannot be presented as a stand-alone claim. Wiesemann did not appeal the finding that stigma damages are recoverable in a cross-motion. Nevertheless, defense counsel argued against stigma damages in their entirety when appearing before this Court.
Wiesemann's contention that stigma damages are not recognized in the Commonwealth is patently false. To be clear, damages for proven diminution in the fair market value of real property-in the form of repair costs and stigma damages-are recoverable where there has been actual damage to property. Carbide, 226 S.W.3d at 57.
Indeed, Wiesemann's argument runs counter to the lower courts' opinions, which were in Wiesemann's favor. She won her claim on stigma damages in the courts below and did not file a cross-motion to appeal that issue to this Court. "[A] question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court." Fischer v. Fischer, 197 S.W.3d 98, 102 (Ky. 2006) (quoting Combs v. Knott Cnty. Fiscal Ct., 283 Ky. 456, 141 S.W.2d 859, 860 (1940) ). Therefore, Wiesemann "is precluded from raising that question on appeal because it was not raised or relied upon in the court below." Combs, 141 S.W.2d at 860.
Stigma Damages and Remediation, Collectively
Next, Wiesemann argues that, because the $60,000 remediation was accepted by the Muncies in the partial settlement agreement for their actual damages, the Muncies cannot separately seek stigma damages for the diminution in value of their property. She argues that awarding the Muncies stigma damages after the remediation damages were settled would result in a "double recovery" for the Muncies. For support, Wiesemann cites Ellison v. R & B Contracting, Inc., 32 S.W.3d 66 (Ky. 2000), for the proposition that when property is damaged, the injured party may seek either the cost of repair of the loss of value of the property, but not both.
In order to recover stigma damages, our case law requires that plaintiffs must have suffered actual property damage. Further, if injured parties receive repair costs that make them whole, then they cannot recover stigma damages that would compensate them above the diminution in their property's value. Ellison, 32 S.W.3d at 70 ("the amount by which the injury to the property diminishes its total value operates as an upper limit on any damage recovery."); Kentucky Stone Co. v. Gaddie, 396 S.W.2d 337, 340 (Ky. 1965). But, if remediation damages for repair costs is insufficient to *880 make the injured party whole, then a recovery for stigma damages up to the monetary value of the diminution may be proper.
Stated differently, the damages recoverable for an actual injury to real property are equal to the sum of the costs of repair and the difference in fair market value of the property before the injury and after it has been repaired. If there is a difference in fair market value after the physical injury has been repaired, then that is the appropriate measure of stigma damages.
For instance, the Court of Appeals has recognized that the Ellison rule assumes a claimant "has the ability to repair [ ] the property damage." Mountain Water Dist. v. Smith, 314 S.W.3d 312, 315 (Ky. App. 2010). "The effect of Ellison is to prevent a claimant from seeking cost of repair damages that exceed the diminution in fair market value ... [t]he [claimants] are seeking diminution in value damages, in part, because they claim they were unable to repair the damage, and [may] present[ ] evidence to that effect in the form of an appraisal." Id.
Correspondingly, the dissenting judge on the court in the case at bar cited to persuasive authority from Utah's highest court for an accurate description of stigma damages:
[S]tigma damages compensate for loss to the property's market value resulting from the long-term negative perception of the property in excess of any recovery obtained for the temporary injury itself. Were this residual loss due to stigma not compensated, the plaintiff's property would be permanently deprived of significant value without compensation.
Walker Drug Co. v. La Sal Oil Co., 972 P.2d 1238, 1246 (Utah 1998).
We concur with that definition of stigma damages and adopt the Court of Appeals' reasoning in Smith. Physical injury to property is often repairable, but stigma damages are meant to assess the value of and redress injury which is not able to be repaired. Stigma damages measure the amount by which a real property's value is diminished in excess of repair costs. Once the oil is removed and the environmental response team departs, stigma is what remains-by its nature, it cannot be repaired.
The courts below were correct that stigma damages are a measure of damages stemming from the actual injury to property. However, if remediation damages are settled but a claim on the stigma damages resulting from the actual injury is reserved, then the injured party may be awarded stigma damages regardless of the partial settlement on remediation.
Unquestionably, the devil is in the details for these types of cases. We can only provide broad principles of law. The method for the computation of damages is easily stated but can be difficult to understand. They can also be difficult to prove. Hopefully, the following will clarify the matter.
When property is damaged by trespass, the degree of the damage is determined at the moment such injury is completed. The recovery shall be the difference in value of the property before the injury occurred, and the value immediately after it is completed. The after-value shall take into account stigma damages, if any. Damages will also include the cost of any repair or remediation.
Here, there was no factual discovery, as the case was dismissed as a matter of law on a motion for summary judgment. The question whether stigma damages exist is entirely a matter of proof. An appraisal or other acceptable evidence may demonstrate stigma damages as a measurable diminution in the fair market value of the Muncies' property resulting from the stigma *881 of the oil contamination and subsequent environmental response. Those damages may be recovered in addition to the settled repair costs. Therefore, this case should be remanded to the trial court for a factual determination as to whether the Muncies were fully compensated for the diminution in fair market value of their property by the $60,000 partial settlement for repair costs.
Conclusion
For the reasons stated herein, we reverse the decision of the Court of Appeals and remand for further proceedings consistent with this opinion.
All sitting.
All concur.